UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEFFREY R. LEBLANC,

                Plaintiff,

v.

KALAMAZOO POLICE
DEPARTMENT et al.,

                Defendants.

_____/

Case No. 1:18-cv-487

Honorable Robert J. Jonker

## **OPINION**

This is a civil action, brought by a recently discharged state prisoner, for violations of the United States Constitution, the Michigan Constitution, and various federal statutes. This is the one hundred and thirteenth such action Plaintiff has filed in the Michigan federal courts in this decade.

Plaintiff sought leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. Initially the Court granted that request, (ECF No. 4). Then, based on the misconception that Plaintiff filed this action while he was still incarcerated, the Court vacated that order and, under 28 U.S.C. § 1915(g), required Plaintiff to pay the entire $400.00 filing fee because he had accumulated more than three strikes for filing meritless actions. (Op. & O., ECF Nos. 6, 7.)

Plaintiff responded by informing the Court that he was discharged from Michigan Department of Corrections (MDOC) custody before he filed the action. Because the "three strike" rule applies only to prisoners, the Court will vacate its "three strike" opinion and order. The Court will also reconsider Plaintiff's application for leave to proceed *in forma pauperis* (ECF No. 2) and grant Plaintiff leave to so proceed.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any action brought *in forma pauperis* under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). The screening required by § 1915(e)(2) applies to cases brought by prisoners and non-prisoners. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997).

The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint because it seeks relief from defendants who are immune and otherwise fails to state a claim.

## Discussion

### I.    Factual allegations

Plaintiff was discharged from incarceration by the MDOC on May 1, 2018. He filed his complaint the same day. Plaintiff bases his complaint on alleged constitutional flaws in the criminal proceedings that resulted in his incarceration and on alleged unconstitutional conditions of confinement.

Some understanding of the events that led to Plaintiff's conviction is helpful in interpreting the rambling allegations in his complaint. Those events are described in *LeBlanc v. Kalamazoo County Sheriff*, No. 1:14-cv-305 (W.D. Mich.):

> Plaintiff Jeffrey R. LeBlanc . . . was sentenced to a prison term of one year and six months to five years, after he pleaded nolo contendere to malicious destruction of personal property of more than $1,000.00 and less than $20,000.00, Mich. Comp. Laws § 750.337a. He sues the Kalamazoo County Sheriff.

> Plaintiff's complaint is brief and somewhat confusing. Plaintiff alleges that he was arrested without a warrant by the Kalamazoo Police Department on

November 28, 2012.  He seeks monetary relief for wrongful incarceration and alleged falsification of documents.  Plaintiff alleges that he filed a grievance about his "whole case," but that he has received no response.  (Compl., docket #1, Page ID#2.)

Several weeks after he filed his complaint, Plaintiff filed a motion seeking immediate release from prison (docket #7), together with a supplement (docket #8).  According to the supplement and its attachments, Plaintiff drove a vehicle belonging to a customer of J&L Auto into a gas pump at a Marathon gas station.  (*Id*., Page ID#26; Supp., docket #8, Page ID##43-48.)  It appears that Plaintiff was an employee of J&L Auto, and that he was sleeping inside the office when the police arrived in response to the car owner's report of damage to her vehicle.  (Supp., docket #8, Page ID#48.)  Plaintiff argues that he was illegally prosecuted in the 9th Judicial District Court for malicious destruction of property, because he was on powerful medications and did not possess the intent to drive his customer's car into the gas pump.

(No. 1:14-cv-305, PageID.76.)  Additional information is provided in *LeBlanc v. Romanowski*, No. 2:14-cv-13219 (E.D. Mich.):

On April 29, 2013, he was sentenced to three months in jail, three years probation, and restitution in the amount of $24,897.97 to an insurance company that insured the owner of damaged property, and $350.15 to the owner of a vehicle damaged by Petitioner.  Shortly after the restitution hearing, Petitioner violated the terms of his probation by absconding from a community-based residential probation facility.  He then indicated that he wished to be discharged from that program.  On September 3, 2013, he was resentenced to 1 year and 6 months to 5 years in prison.

(No. 2:14-cv-13219, PageID.1202)

With that background, the role played by each Defendant is more readily apparent.  Defendant Kalamazoo Police Department arrested Plaintiff for the incident at the gas station.  Plaintiff was eventually detained by Defendant Kalamazoo County Sheriff[1] at the Kalamazoo County jail.  Plaintiff sues Defendant City of Kalamazoo and Defendant County of Kalamazoo based on the actions of the City's police department and the County's sheriff's department, respectively.  The City and County of Kalamazoo are also allegedly responsible for the myriad

---

[1] Plaintiff names the Kalamazoo County Sheriff as a defendant.  Plaintiff's allegations, however, reveal that when he writes "Kalamazoo County Sheriff" he means the Kalamazoo County Sheriff's Department and not the individual serving as sheriff in Kalamazoo County.

procedural improprieties that occurred during Plaintiff's criminal prosecution. Those improprieties also rendered Plaintiff's conviction invalid, Plaintiff contends, and Defendant State of Michigan and Defendant MDOC therefore are liable because they unlawfully imprisoned him. Defendant Michigan State Police allegedly failed to investigate Plaintiff's complaints regarding his prosecution. Defendant State Bar of Michigan similarly allegedly failed to investigate Plaintiff's complaints regarding the attorneys who were involved in his prosecution.

Plaintiff sues Oshtemo Township, where the incident occurred, because the Oshtemo Township Police (actually the Kalamazoo County Sheriff's Department "acting as a police official for Oshtemo Township) told Plaintiff not to go to the Marathon station anymore at the request of the owner. Defendant United Petroleum Equipment and Defendant Corporate Marathon provided fraudulent information to the Kalamazoo courts regarding the proper amount of restitution for the damage Plaintiff caused. Defendant Social Security Administration stopped Plaintiff's disability payments based on the improper criminal prosecution.

Petitioner also contests the propriety of his 2008 criminal prosecution in Kalamazoo County. Presumably, he sues the Kalamazoo Police Department, the Kalamazoo County Sheriff's Department, the City of Kalamazoo, and the County of Kalamazoo for those improprieties as well.

Petitioner names as defendants 11 different MDOC Correctional facilities where he was placed during his incarceration. He sues them in part because the incarceration was unlawful and in part because of the horrific conditions of confinement he suffered.

Finally, Plaintiff sues Kalamazoo County, Lenawee County, Manistee County, and the United States because the courts, on behalf of those entities, failed to properly handle Petitioner's post-conviction cases seeking relief.

Plaintiff asks this Court to set aside his criminal convictions, remove any order for involuntary treatment, award millions of dollars in damages, award five years of social security benefits, and fine the Social Security Administration.

Plaintiff list several bases for this Court's jurisdiction: eleven federal constitutional amendments or provisions; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e - 17; the American Bar Association Model Code of Professional Conduct and Model Rules of Professional Conduct; the Administrative Procedures Act, 5 U.S.C. §§ 500 – 596; the Americans with Disabilities Act, 42 U.S.C. §§ 12101 - 12213; the Federal Tort Claims Act and the Tucker Act, 28 U.S.C. §§ 1346, 2671 – 2678, 2680; the Model Penal Code; the Statute of Frauds; six provisions from the Michigan Constitution of 1963; and 28 U.S.C. §§ 1331, 1343, 1346, and 1367.

## II.    Improperly named defendants

Plaintiff lists 26 separate defendants. Many of those defendants, however, are not separate entities capable of being sued. Plaintiff sues the Charles Egeler Reception and Guidance Center (RGC), the G. Robert Cotton Correctional Facility (JCF), the Michigan Reformatory (RMI), the Bellamy Creek Correctional Facility (IBC), the Richard A. Handlon Correctional Facility (MTU), the Macomb Correctional Facility (MRF), the Carson City Correctional Facility (DRF), the Chippewa Correctional Facility (URF), the Ionia Correctional Facility (ICF), the Oaks Correctional Facility (ECF), and the Gus Harrison Correctional Facility (ARF). These individual prisons are "buildings used by the MDOC to house prisoners." *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934, at *7 (W.D. Mich. Oct. 28, 2013). "They are not the proper public entity for suit." *Id.* *7; *see also Cage v. Kent County Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) ("The district court also properly found that the jail

facility named as a defendant was not an entity subject to suit under § 1983."); *Belcher v. Ottawa County Adult Corr. Facility*, No. 1:09-cv-173, 2009 WL 1163412, at *2 (W.D. Mich. Apr. 28, 2009) ("The Ottawa County Adult Correctional Facility is a building, not an entity capable of being sued in its own right.").

Additionally, Plaintiff sues the Kalamazoo Police Department and the City of Kalamazoo. A suit against such a city police department is, in reality, a suit against the city. *See Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir. 1994) (court affirmed summary judgment in favor of Romulus Police Department because "[a] suit against a city police department in Michigan is one against the city itself , because the city is the real party in interest."); *see also Glenn v. Walker*, 65 F. App'x 53, 54 (6th Cir. 2003) ("[T]he district court properly dismissed . . . claims against the City of Detroit Police Department . . . [because t]he Police Department is not amenable to suit . . . ."). Similarly, Plaintiff sues the Kalamazoo County Sheriff's Department and the County of Kalamazoo. A "Sheriff's Department is not a legal entity subject to suit[.]" *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (citing *Kurz v. Michigan*, 548 F2d 172, 174 (6th Cir.), *cert. denied*, 434 U.S. 972 (1977)).

The Court will drop as defendants the correctional facilities, the Kalamazoo Police Department, and the Kalamazoo County Sheriff's Department because those parties are not amenable to suit. Plaintiff has already named as defendants the proper parties—the municipalities and the State of Michigan—thus, all of his claims remain.

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

A.    The Civil Rights Act of 1964

Plaintiff sues under the Civil Rights Act of 1964—specifically Title VII of that act, which is codified in Volume 42 of the United States Code beginning at section 2000e. "Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Vance v. Ball State University*, 570 U.S. 421, 426 (2013). Thus, to state a Title VII claim, Plaintiff "must allege sufficient 'factual content' from which a court, informed by its 'judicial

experience and common sense,' could 'draw the reasonable inference,' *Iqbal*, 556 U.S. at 678,

679, that [Defendants] 'discriminate[d] against [Plaintiff] with respect to [his] compensation,

terms, conditions, or privileges of employment, *because* of [his] race, color, religion, sex, or

national origin.' 42 U.S.C. § 2000e-2(a)(1) . . . ." *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th

Cir. 2012) (emphasis in original).

Plaintiff's allegations fall short in every respect. He does not allege facts permitting

the inference that any defendant "employed" him. He does not allege facts permitting the inference

that any defendant discriminated against him with respect to the terms of employment. He does

not allege facts permitting the inference that race, color, religion, sex, or national origin motivated

the discrimination. Plaintiff has failed to state a claim under Title VII.

B.      Americans with Disabilities Act

The Americans with Disabilities Act (ADA) prohibits discrimination, under

particular circumstances, against an individual with a disability. Plaintiff claims he suffers a

disability in the form of amnesia.

Plaintiff does not identify the ADA title under which he is suing Defendants. Title I

of the ADA prohibits discrimination based on disability by employers. 42 U.S.C. § 12112(a).

Because Plaintiff does not allege facts permitting the inference that any defendant employed him,

he has not stated a claim for discrimination under Title I.

Title II of the ADA prohibits discrimination based on disability in the provision of

benefits, programs, or activities by a public entity. Plaintiff alleges that the public entity

Defendants failed him in many respects; however, he does not allege that any of these entities

discriminated against him based on disability, nor does he allege any facts from which the Court

might infer such a discriminatory intent.

Title III of the ADA prohibits discrimination based on disability in the enjoyment of goods, services, and facilities by private entities that offer public accommodations. 42 U.S.C. § 12182(a). Plaintiff names two private entities as Defendants: Corporate Marathon and United Petroleum Equipment. Plaintiff does not allege that either of these entities discriminated against him based on disability, nor does he allege any facts from which the Court might infer such a discriminatory intent.

      C.     <u>ABA Model Code of Professional Responsibility and Rules of Professional Conduct</u>

The ABA Model Rules of Professional Conduct and the predecessor Model Code of Responsibility, as their names indicate, serve as models for state courts and bar associations in crafting their own rules of conduct. In this Court, attorneys are bound by the Rules of Professional Conduct adopted by the Michigan Supreme Court. W.D. Mich. LCivR 83.1(j). The Rules of Professional Conduct, however, "do not create enforceable federal rights or private causes of action." *In re Green*, 42 F. App'x 815, 819 (7th Cir. 2002). Indeed, the Michigan Rules of Professional Conduct state "[t]he rules do not, however, give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule. Mich. Rules of Prof'l Conduct R. 1.0(b). Similarly the ABA Model Rules state that "[v]iolation of a Rule should not itself give rise to a cause of action against a lawyer . . . ." Model Rules of Prof'l Conduct, Scope ¶19. Accordingly, Plaintiff cannot state a claim for violation of the Model Code or the Model Rules.

      D.     <u>The Administrative Procedures Act</u>

The Administrative Procedures Act provides a right of judicial review to a person aggrieved by agency action. 5 U.S.C. §§ 702, 704. The United States has waived sovereign immunity to permit such review, but only where the action seeks "relief other than money

damages." 5 U.S.C. § 702. To the extent Plaintiff seeks money damages under the Administrative Procedures Act, Plaintiff has failed to state a claim. Moreover, any request for prospective injunctive relief has been mooted by the Social Security Administration's award of Supplemental Security Income (SSI) benefits to Plaintiff based on a claim he filed on May 1, 2018. (Notice of Award, ECF No. 5-1, PageID.38.)

Not every agency action is reviewable under the Administrative Procedures Act. The Act does not apply if another statute precludes judicial review. 5 U.S.C. § 701(a)(1). Section 405(g) of Title 42 United States Code provides for judicial review of a decision of the Commissioner of Social Security where certain requirements have been met. Section § 405(g) provides the exclusive means to obtain judicial review of a decision denying or discontinuing benefits: "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal or governmental agency except as . . . provided [in § 405]." 42 U.S.C. § 405(h). Thus, Plaintiff may not seek review of the decision discontinuing his SSI benefits under the Administrative Procedures Act.

Plaintiff offers 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant) as alternative grounds for attacking the decision discontinuing his SSI benefits. Section 405 also forecloses actions under those statutory sections: "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h).

Plaintiff has not cited 42 U.S.C. § 405(g) as a basis for this Court's review of the decision denying SSI benefits; but, if he had, that claim would fail as well. Plaintiff alleges that the Social Security Administration discontinued his benefits because he was incarcerated for a

criminal conviction. Section 402(x)(1) provides that "no monthly benefits shall be paid . . . for any month . . . [when the claimant] is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense." 42 U.S.C. § 402(x)(1). Plaintiff contends that his conviction was unconstitutional; however, he does not deny that it occurred or that the state incarcerated him as a result. Therefore, Plaintiff's benefits were properly suspended.

Even if there was a meaningful question as to the propriety of the suspension, Plaintiff cannot obtain review here because he has failed to follow the steps necessary to confer jurisdiction on this Court. The Court recently considered this issue in *Brown v. Comm'r of Social Security*, No. 1:16-cv-1464, 2017 WL 3908272 (W.D. Mich. June 2, 2017):

> Section 405(g) is a limited waiver of sovereign immunity. It states that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g) (emphasis added); see also *McQueary v. Colvin*, No. 3:15-cv-68, 2017 WL 63034, at *4 (W.D. Ky. Jan. 5, 2017). Plaintiff cannot obtain judicial review of the Commissioner's decision until after a "final decision" by the Commissioner made after a hearing. *See Rowden v. Warden*, 89 F.3d 536, 537 (8th Cir. 1996). "Without a 'final decision', the District Court has no jurisdiction to review the Commissioner's determination." *Aruanno v. Commissioner*, 471 Fed.Appx. 87, 88 (3d Cir. 2012); *Yost v. Secretary of Health & Human Servs.*, No. 93-5321, 1993 WL 384970, at *1 (6th Cir. Sept. 29, 1993) . . . .
>
> After the Administration made its initial determination suspending plaintiff's benefits, plaintiff was required to request reconsideration. 20 C.F.R. § 404.900(a)(2). There is no evidence that plaintiff made a request for reconsideration or that he received a decision at the reconsideration stage of administrative proceedings. Plaintiff was not entitled to a hearing before an ALJ absent a timely request for reconsideration and a decision at the reconsideration level that plaintiff could challenge at an administrative hearing. *See Holcomb v. Colvin*, No. 3:13-cv-5256, 2014 WL 51148, at *4 (W.D. Wash. Jan. 7, 2014); *see also* 20 C.F.R. § 404.900(a)(3). The ALJ dismissed plaintiff's request for a hearing because plaintiff skipped the reconsideration level of review. The ALJ's order dismissing plaintiff's request for a hearing is not a final administrative decision subject to judicial review. *See Hilmes*, 983 F.2d 67, 70 (6th Cir. 1993); *Weaver v.*

> *Commissioner*, 1:13-cv-303, 2014 WL 1364976, at *5 (N.D. Ohio Mar. 31, 2014);
> *Thomas v. Social Sec. Admin*, No. 07-11526, 2008 WL 2242561, at *3-4 (E.D.
> Mich. May 30, 2008).

*Brown*, 2017 WL 3902872, at *3-4. Similarly, here, Plaintiff has failed to allege that the decision discontinuing his SSI benefits was final within the meaning of § 405.[2] Therefore, this Court would not have jurisdiction to review that decision.

Plaintiff has failed to state a claim against the Social Security Administration or against the United States based on the actions or inaction of the Social Security Adminstration.

### E. The Federal Tort Claims Act (FTCA) and the Tucker Act

"The Federal Tort Claims Act grants a limited waiver of sovereign immunity and allows tort claims 'in the same manner and to the same extent as a private individual under like circumstances.'" *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995) (quoting 28 U.S.C. § 2674). The FTCA is the exclusive remedy for suits against the United States or its agencies sounding in tort, including negligence. 28 U.S.C. § 2679.

As noted above, however, the review available under 42 U.S.C. § 405(g) displaces FTCA claims with respect to Social Security Administration decisions regarding benefits. The only other "federal" actor mentioned in the complaint is Judge Patrick Duggan of the United States District Court of the Eastern District of Michigan. (Compl., ECF No. 1, PageID.16.) Plaintiff contends that Judge Duggan improperly handled Plaintiff's habeas corpus petition. (*Id.*) Additionally, Plaintiff complains generally that judges in the federal courts used the PLRA's "three strike" rule to deny him access to the courts.

---

[2] There is a narrow exception to the exhaustion requirement where a claimant presents a constitutional claim. *See Califano v. Sanders*, 430 U.S. 99, 108-109 (1977). Here, Plaintiff does not present a constitutional challenge to the denial of benefits or the statutory section that permitted that denial. Instead, he challenges the constitutionality of his conviction. The statute contemplates the possibility of a constitutional challenge to a conviction. Consideration of that question, however, is for "a court of competent jurisdiction" not the Social Security Administration. 42 U.S.C. § 402(x)(B)(iii). Such a challenge would not excuse a failure to exhaust administrative remedies.

Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12. Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity.

In defending against a claim under the FTCA, the United States is "entitled to assert any defense based upon judicial . . . immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim . . . ." 28 U.S.C. § 2674. Accordingly, Plaintiff has no claim against the United States under the FTCA. *See, e.g., Golden v. United States*, 118 Fed. Cl. 764 (Ct. Cl. 2014).

"The Tucker Act governs non-tort claims against the United States founded on the Constitution, federal statutes, executive regulations, or contracts with the United States." *A.E. Finley & Assoc., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990). Such claims typically fall within the jurisdiction of the Court of Claims. 28 U.S.C. § 1491. "Under 28 U.S.C. § 1346(a)(2), the district court has concurrent jurisdiction over claims for $10,000 or less [excepting certain contract claims]." *A.E. Finley*, 898 F.2d at 1167. Because Plaintiff's claim

against the United States seeks damages of $3,000,000.00, this Court does not have jurisdiction over the claim under § 1346(a)(2) and it must be dismissed.

F.     42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Plaintiff's claims against United Petroleum Equipment and Corporate Marathon fail at the outset because Plaintiff has failed to allege that these Defendants were acting under color of state law. In order for a private party's conduct to be "under color of state law", it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Plaintiff has not presented any allegations by which the conduct of United Petroleum or Marathon could be fairly attributed to the State. Accordingly, he fails to state a § 1983 claim against them.

The remaining Defendants are all "state actors" but several of them are immune from suit. Regardless of the form of relief requested, Plaintiff may not maintain a § 1983 action against the State of Michigan or its departments because they are immune from suit in the federal courts under the Eleventh Amendment—unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara*

*v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

In numerous opinions, the Sixth Circuit has specifically held that the MDOC, the Michigan State Police, and even the State Bar of Michigan, are immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010) (MDOC); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000) (MDOC) *Lavrack v. City of Oak Park*, No. 98-1142, 1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999) (Michigan State Police); *Lawrence v. Chabot*, 182 F. App'x 442, 450 (6th Cir. 2006) (State Bar of Michigan); *Dubuc v. Michigan Board of Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003) (State Bar of Michigan).[3]  In addition, the State of Michigan (acting through the Michigan Department of Corrections or the Michigan State Police or the State Bar of Michigan) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the Court dismisses the State of Michigan, the MDOC, the Michigan State Police, and the State Bar of Michigan.

Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the next step is to identify the specific constitutional right allegedly

---

[3] Whether the State Bar of Michigan is a state actor depends on the circumstances of the case.  Where the bar acts as an arm of the Michigan Supreme Court, however, it is entitled to Eleventh Amendment immunity.  Here, Plaintiff complains that the bar did not adequately investigate his complaints regarding attorneys involved in his prosecution.  The Sixth Circuit has looked to the Michigan Supreme Court's statutory grant of power in Mich. Comp. L. § 600.904 to determine if the state bar is functioning as an arm of the Michigan Supreme Court.  *Lawrence*, 182 F. App'x at 450; *Dubuc*, 342 F.3d at 615.  Those statutory powers include the rules of conduct for bar members and discipline and suspension for misconduct.  Accordingly, it appears the State Bar of Michigan was functioning as an arm of the state in this instance as well.

infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's constitutional claims can be divided into three groups: (1) claims relating to the constitutionality of the fact and duration of Petitioner's convictions and incarceration (Fourth Amendment unlawful arrest, Fifth Amendment violation of the right against self-incrimination, Sixth Amendment ineffective assistance of counsel, Fourteenth Amendment due process violations); (2) Eighth Amendment claims regarding the conditions of his confinement; and (3) First Amendment claims regarding access to the courts.

1.     Claims relating to Petitioner's conviction and sentence

Because Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of Constitutional rights relating to his convictions, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997) (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).

Plaintiff's allegations clearly call into question the validity of his 2012 and 2008 convictions. It is possible that a claim for unlawful arrest might not implicate the validity of a criminal conviction. *See, e.g., Graves v. Mahoning Cnty.*, 534 F. App'x 399, 405 (6th Cir. 2013).

Here, however, Plaintiff bases his argument on the premise that defects in the procedures leading up to his arrests render the arrests unlawful. The unlawful arrests, in turn, render his convictions unlawful. Therefore, his claims are barred under *Heck* until his criminal convictions have been invalidated.

Plaintiff is well aware of the *Heck* bar. This Court and the United States District Court for the Eastern District of Michigan have relied on the *Heck* bar to dismiss five of Plaintiff's prior civil rights cases. *LeBlanc v. Macomb Regional Facility*, No. 2:15-cv-10482 (E.D. Mich.) (February 13, 2015, Op. & Order); *LeBlanc v. Schuette*, No. 2:15-cv-10555 (E.D. Mich.) (February 17, 2015, Op. & Order); *LeBlanc v. Kalamazoo County Sheriff*, No. 1:14-cv-305 (W.D. Mich.) (July 29, 2014, Op.); *LeBlanc v. Kalamazoo County Government*, No. 1:14-cv-308 (W.D. Mich.) (May 21, 2014, Op.); *LeBlanc v. State of Michigan*, No. 1:14-cv-552 (W.D. Mich.) (June 19, 2014, Op.).

If Plaintiff's claims against the City or County of Kalamazoo were able to survive the *Heck* bar, the Court would still dismiss them because Plaintiff's allegations of impropriety are so conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-69; *Twombly*, 550 U.S. at 555. Plaintiff's allegations are nothing more than labels and conclusions. That is insufficient to state a claim under § 1983.

2.      Eighth Amendment claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

To prevail on an Eighth Amendment claim, Plaintiff must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Plaintiff provides factual detail regarding repeated sexual assaults and forced medications. Though his allegations strain credulity, the alleged misconduct unquestionably rises to the level of cruel and unusual punishment in violation of the Eighth Amendment.

Even if Plaintiff states an Eighth Amendment claim, there are simply no Defendants remaining that might be liable for the alleged misconduct. The correctional facilities are not amenable to suit and the State of Michigan and the MDOC are immune from suit.

3.    First Amendment access to the courts claims

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Plaintiff had almost unlimited access and a virtually uninterrupted presence in the federal courts during his incarceration. Nonetheless, Plaintiff complains that the United States denied him access to the courts by virtue of Judge Duggan's dismissal of Plaintiff's habeas corpus action. *LeBlanc v. Romanowski*, No. 14-cv-13219, 2015 WL 4715951 (E.D. Mich. Aug. 7, 2015). Judge Duggan's dismissal of Plaintiff's habeas petition is not the denial of his right to access the courts, it is the fulfillment of it. Moreover, Plaintiff has failed to allege the necessary actual injury because his petition was meritless. Section 2254(b)(1) of Title 28, United States Code, precludes habeas corpus relief where the applicant has failed to exhaust state court remedies. Judge Duggan dismissed the petition without prejudice for that reason. The Sixth Circuit denied Plaintiff's request for a certificate of appealability with regard to Judge Duggan's denial of Plaintiff's habeas petition. *LeBlanc v. Romanowski*, No. 15-1974 (6th Cir. Nov. 6, 2015). The Supreme Court denied Plaintiff's petition for a writ of certiorari. *LeBlanc v. Romanowski*, No. 15-7024 (Jan. 25, 2016).

Plaintiff also contends that he was denied access to the federal courts by virtue of the "three strike" rule of the PLRA, 28 U.S.C. § 1915. The Sixth Circuit has held "§ 1915(g) does not infringe upon the fundamental right of access to the courts." *Wilson v. Yaklich*, 148 F.3d 596, 605 (6th Cir. 1998).

Plaintiff has failed to state a claim for denial of access to the federal courts.

Plaintiff raises similar claims of denial of access to the courts against Manistee and Lenawee (and perhaps Kalamazoo) counties based on the actions of the circuit courts. A municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 37 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974)). In a municipal liability claim, the court must initially determine whether a policy or custom caused the injury. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that he incurred the particular injury because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784-85 (1997).

Generally, the operation of the Michigan circuit courts is not an area where the host county enjoys much policymaking authority. "[T]he fundamental and ultimate responsibility for all aspect of court administration, including operations and personnel matter with the trial courts, reside within the inherent authority of the judicial branch." *Judicial Attorneys Ass'n v. State of Michigan*, 586 N.W.2d 894, 897 (Mich. 1998) (footnote omitted). The "judicial branch" consists of "one court of justice," which is divided into a supreme court, court of appeals, circuit courts, probate courts, and other courts created by a two-thirds vote of the legislature. Mich. Const. art. VI. The Michigan Supreme Court maintains general superintending control over all the state courts. Mich. Const. art. VI, § 4. The Michigan Supreme Court has decided that workers in

Michigan's circuit courts, district courts, and probate courts are not employees of the county in which they work or the local government unit that funds their salaries and benefits, but of the state's one court of justice. *Judicial Attorneys Ass'n*, 586 N.W.2d at 894.

Although the county plays a minimal role in the day-to-day operation of the courts, it may still be possible that the county enacts a policy that causes constitutional injury through the operation of the courts. Plaintiff's complaint, however, fails to identify any such policy on behalf of any of the county defendants. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).

G.    State law claims

Plaintiff invites the Court to exercise supplemental jurisdiction, under 28 U.S.C. § 1367, over several state law claims. This Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims will be dismissed on grounds of immunity and for failure to state a claim, under 28 U.S.C. § 1915(e)(2). The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.

A Judgment consistent with this Opinion will be entered.


Dated:      June 29, 2018                      /s/ Robert J. Jonker
                                          ROBERT J. JONKER
                                          CHIEF UNITED STATES DISTRICT JUDGE